# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 20-1959V

| | |
|---|---|
| ALLISON A. HAYES,<br><br>                  Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                  Respondent. | Chief Special Master Corcoran<br><br>Filed: July 23, 2024 |

*Scott William Rooney*, Nemes, Rooney, P.C., Farmington Hills, MI, for Petitioner.

*Parisa Tabassian*, U.S. Department of Justice, Washington, DC, for Respondent.

### FINDINGS OF FACT AND RULING ON ENTITLEMENT[1]

On December 23, 2020, Allison Hayes filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA") following a Tdap vaccine she received on September 11, 2019. Amended Petition at ¶4, 20. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons discussed below, I find that Petitioner more likely than not received the vaccine in her left shoulder, and suffered the residual effects of her alleged vaccine-

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

related injury for more than six months. Petitioner has satisfied all of the requirements of a Table SIRVA claim, and is therefore entitled to compensation under the Vaccine Act.

## I.     Relevant Procedural History

On March 31, 2023 (more than two years after the case was initiated), Respondent filed a Motion to Dismiss and Rule 4(c) Report. *See* ECF No. 31. Respondent argues that Petitioner has failed to establish that she received a covered vaccine in her injured shoulder, and that she could not satisfy the statutory severity requirement. Rule 4(c) Report at 4-6. Petitioner filed additional affidavits and medical records on July 24, 2023, September 11, 2023, and January 11, 2024 (ECF No. 33-34, 45, 47) and a Brief Regarding On-Set of Severity of Injury Site ("Br.") on July 24, 2023. ECF No. 37. Respondent filed a responsive brief on September 11, 2023 ("Repl."). ECF No. 44.

The matter is now ripe for adjudication.

## II.    Factual History

Petitioner received a Tdap vaccine on September 11, 2019, at an urgent care in Lansing, Michigan. Ex. 2 at 98. Although the vaccination record states that it was administered into her right arm, Petitioner alleges that the vaccine was administered into her left arm. *Id*.; Ex. 7 at ¶8. She recalled developing "severe pain within hours after the vaccination." *Id*. at ¶9.

On September 16, 2019 (five days after vaccination), Petitioner was seen by her primary care physician ("PCP") for left arm pain. Ex. 4 at 685. She reported that "she had her Tdap on 09-11-19 in her left arm." *Id*. at 686. She reported that "when the injection occurred about halfway through . . . it sounded like there was air and a gurgling noise." *Id*. On exam, her left upper arm was tender and swollen. *Id*. She was assessed with a left deltoid muscle strain and sent for an ultrasound. *Id*. at 685. The ultrasound revealed a small amount of fluid in the bursa and "moderate fluid/thickening of the biceps tendon sheath." Ex. 1 at 14-15.

Petitioner reported her left shoulder pain to an orthopedist on October 21, 2019, adding that symptoms began suddenly on the day of vaccination. Ex. 1 at 51. On exam, Petitioner displayed significantly decreased range of motion, decreased strength, and positive impingement testing. *Id*. at 52. Petitioner received a cortisone injection and was given an "extensive home exercise program." *Id*. at 53.

On December 11, 2019, Petitioner returned to her orthopedist with improved left shoulder symptoms. Ex. 1 at 42. She now reported that the cortisone injection provided significant relief for the first two weeks and overall improvement of 50%. *Id*. Petitioner continued to have weakness in her left shoulder, but had improved range of motion and

2

negative impingement testing. *Id.* at 43. She was instructed to continue her home exercises, to use oral anti-inflammatories, and to return as needed. *Id.*

More than five months later, on May 13, 2020, Petitioner began a course of physical therapy to address temporomandibular joint disorder ("TMJ"), cervicalgia, neck pain, and headaches. Ex. 2 at 59. During the initial evaluation, Petitioner was assessed with 4+/5 strength in her left shoulder and given a long-term goal of improving upper extremity strength. *Id.* at 60, 62. Although treatment did not focus on her left shoulder in all sessions, Petitioner received shoulder exercises in during at least six of twelve sessions (between June 1, 2020, and June 30, 2020). *Id.* at 12, 15, 36, 40, 44, 48. During a re-evaluation on June 19, 2020, the therapist noted that Petitioner had "gained in left shoulder IR/ER." *Id.* at 24. At discharge on July 22, 2020, Petitioner had made "some progress" toward her upper extremity strength goal. *Id.* at 5.

Over two years later, on February 17, 2023, Petitioner saw a specialist in osteopathic neuromusculoskeletal medicine for neck pain with numbness and tingling down both arms. Ex. 14 at 3. She reported that she had had "a vaccine injury to [her] left shoulder in 2019" which caused "a lot of pain and stiffness." *Id.* On exam, Petitioner had 4/5 strength in her left deltoid. *Id.* at 7. She was treated with osteopathic manipulative treatment and given a home exercise program. *Id.* at 9-11. She retuned on March 3, 2023 complaining of stabbing pain in both arms. *Id.* at 12. She again received osteopathic manipulative treatment. *Id.* at 16-17.

On November 21, 2023, Petitioner returned to physical therapy for her left shoulder. Ex. 15 at 27. She reported having an injection in her shoulder on September 11, 2019, which led to frozen shoulder. *Id.* She reported current pain with occasional numbness/tingling. *Id.* On exam, Petitioner had reduced range of motion and reduced strength with abduction. *Id.* at 28-29. Impingement tests were positive. *Id.* at 29. Treatments twice a week for up to eight weeks was planned. *Id.* at 30. Petitioner had additional physical therapy treatments on December 6 and 13, 2023. *Id.* at 4, 10.

No additional records have been filed.

### III.     Applicable Legal Standards

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove by a preponderance of the evidence the matters required in the petition by Vaccine Act Section 11(c)(1). The Vaccine Act also requires that a petitioner demonstrate that "residual effects or complications" of a vaccine-related injury continued for more than six months. Vaccine Act §11(c)(1)(D)(i). A petitioner cannot establish the length or ongoing nature of an injury merely through self-assertion unsubstantiated by medical records or medical opinion. §13(a)(1)(A). "[T]he fact that a petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged

injury." *Morine v. Sec'y of Health & Human Servs.*, No. 17-1013V, 2019 WL 978825, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014).

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19. And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL

408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### IV. Findings of Fact

#### A. Site of Vaccination

The entirety of the record preponderantly supports the conclusion that Petitioner more likely than not received the September 11, 2019 vaccination in her left arm.

While the vaccine administration record admittedly states that the Tdap vaccine was administered to Petitioner's *right* deltoid, Petitioner consistently reported to her medical providers that she received the vaccine in her left arm. Ex. 2 at 98. Petitioner in fact reported receiving the vaccine in her left arm only five days after her vaccination, deeming it the cause of her left arm/shoulder pain. Ex. 4 at 685-686. A month later, Petitioner again reported that she had had a Tdap vaccine to her left arm to her orthopedist. Ex. 1 at 51. Petitioner's consistency in reporting that she received her vaccination in her left arm continued for more than three years. *See* Ex. 14 at 3 (Petitioner reported "a vaccine injury to [her] left shoulder in 2019."); Ex. 15 at 27 (She reported having an injection in her shoulder in 2019, which led to frozen shoulder.).

The degree to which Petitioner was consistent in reporting her left shoulder pain as related to her Tdap vaccine when seeking treatment is especially convincing evidence supporting her situs argument. Further, there is no evidence *other* than the initial administration record that the vaccination was administered in Petitioner's right arm. And I have noted in many prior cases that vaccination records are often incorrect, assuming a situs of administration before the vaccination occurs, with no subsequent correction. *See e.g., Rodriguez v. Sec'y of Health & Human Servs.*, 2022 WL 4458350, at *3 (Fed. Cl. Spec. Mstr. August 23, 2022). Thus, Petitioner's assertions are sufficiently corroborated by the medical records to accept her contention of vaccine situs.

### B. Severity

To establish six months of residual effects, Petitioner must demonstrate that her symptoms more likely than not continued until at least March 11, 2020. The undisputed record establishes that Petitioner had continuous treatment for her injury through her orthopedist appointment on December 11, 2019 – three months after vaccination. Respondent argues that Petitioner has not provided preponderant evidence that her injury lasted three months more, noting that she "sought no medical treatment for any left shoulder issues," after December 11, 2019, despite having physical therapy treatment "for other conditions unrelated to her left shoulder." Resp. at 5-6.

Despite the gap in medical records between December 11, 2019, and May 13, 2020, there is still preponderant support for the finding that Petitioner's symptoms continued for more than six months. At the time of her orthopedist appointment on December 11, 2019, Petitioner's most significant remaining deficit was left shoulder weakness. Ex. 1 at 43. Similarly, when Petitioner began physical therapy on May 13, 2020, she was assessed with left shoulder weakness. *See* Ex. 2 at 60. Her long-term therapy goals included upper extremity strengthening. *Id*. at 62.

Thereafter, during at least six physical therapy treatments in June 2020, Petitioner received shoulder-specific exercises. *Id.* at 12, 15, 36, 40, 44, 48. At a re-evaluation on June 19, 2020, the physical therapist noted improvement in "left shoulder IR/ER." *Id.* at 24. Although Petitioner's physical therapy course was precipitated by other non-related diagnoses, including TMJ and cervicalgia, she was assessed with specific shoulder symptoms which mirrored the symptoms she had in December 2019 and she received shoulder specific treatment, resulting in improvement. Thus, there is preponderant evidence that Petitioner continued to suffer left shoulder weakness at least through June 2020, which is more than six months after symptoms onset.

### V. Ruling on Entitlement

### A. *Requirements for Table SIRVA*

Other than the foregoing, Respondent has not contested Petitioner's proof on the remaining elements of a Table SIRVA. *See* Respondent's Rule 4(c) Report. There are no records indicating that Petitioner had pain or dysfunction of her left shoulder prior to her Tdap vaccination. When seeking treatment, Petitioner reported that her pain began within 48 hours of her vaccination and she reported pain that was limited to her left upper arm and shoulder. *See* Ex. 1 at 51; Ex. 4 at 685-686; Ex. 7 at ¶9. I have found that Petitioner has preponderantly established that her Tdap vaccination was administered to her left

6

shoulder, rather than her right, satisfying the third QAI element. Finally, no other condition has been identified to explain Petitioner's post-vaccination symptoms. *See* 42 C.F.R. § 100.3(c)(10)(i)-(iv). Accordingly, I find that Petitioner has provided preponderant evidence to establish that she suffered a Table SIRVA injury.

   B.   *Additional Requirements for Entitlement*

Because Petitioner has satisfied the requirements of a Table SIRVA, she need not prove causation. Section 11(c)(1)(C). However, she must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D).

The vaccine record shows that Petitioner received a Tdap vaccination on September 11, 2019 at an urgent care in Lansing, MI. Ex. 4 at 98; Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i) (requiring administration within the United States or its territories). Additionally, Petitioner has stated that she has not filed any civil action or received any compensation for her vaccine-related injury, and there is no evidence to the contrary. *See* Amended Petition at ¶10; Ex. 7 at ¶15; Section 11(c)(1)(E) (lack of prior civil award). And as noted above, I have found that severity has been established. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement). Therefore, Petitioner has satisfied all requirements for entitlement under the Vaccine Act.

## Conclusion

**Based on the entire record in this case, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation in this case. A separate damages order will be issued.**

   **IT IS SO ORDERED.**

                              s/Brian H. Corcoran
                              Brian H. Corcoran
                              Chief Special Master